IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| RONALD MORECK § | | CIVIL ACTION NO. |
| PLAINTIFF, § | | |
| § | | |
| V. § | | 7:17-cv-164 |
| § | | |
| XCOR AEROSPACE, INC, § | | |
| § | | |
| DEFENDANT. § | | JURY DEMANDED |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE SENIOR UNITED STATES DISTRICT JUDGE:

**Plaintiff RONALD MORECK ("Plaintiff")** files this Complaint and would respectfully show the Court as follows:

### PARTIES

1. Plaintiff is an individual who resides in Luzerne County, Pennsylvania.

2. **Defendant XCOR AEROSPACE, INC ("Defendant")** is a California corporation with its principal place of business in Midland, Texas. Defendant may be serviced with process through its registered agent, Randy L. Baker, 2901 Enterprise Lane, Midland, TX 79706.

### JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has federal question jurisdiction because the action arises under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §623.

4. Venue is proper in the U.S. District Court for the Western District of Texas, Midland-Odessa Division pursuant to 28 U.S.C. §1391(b) because the unlawful practices alleged below were committed therein.

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims which are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

6. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this suit within (90) days of receiving a Notice of Right to Sue from the EEOC, a true and correct copy of which is attached hereto as Exhibit A.

## CONDITIONS PRECEDENT

7. All conditions precedent has been performed or have occurred.

## FACTS

8. Defendant is a leading commercial spacecraft manufacturer founded in 1999 in Mojave, California. It is currently building a Research and Development Center in Midland, Texas.

9. Defendant is a private company that engages in research, development, and production of reusable rocket engines and related technologies to enable space access for individuals, private enterprises, universities, and nations.

10. Defendant is represented by three different divisions: (1) XCOR Aerospace; (2) XCOR Space Expeditions; and (3) XCOR Science. XCOR Aerospace develops rocket-propelled spacecraft and aircraft, and custom order rocket propulsion systems and components. XCOR

Space Expeditions sells private space flights to individuals, preparatory trainings and space-related experiences, and multi-flight packages to promotional clients. XCOR Science manages all payloads and experiments missions on board Lynx.

11. XCOR Lynx is a piloted, two-seat, high-performance, fully reusable, liquid rocket powered vehicle that takes off and lands horizontally from a runway. Defendant has three planned versions of Lynx: Lynx Mark I, Lynx Mark II, and Lynx Mark III. Lynx Mark I is the initial prototype spacecraft and will be placed in commercial service after being licensed to launch. Lynx Mark II is the production model. Lynx Mark III is a modified derivate of Lynx Mark II, with an external mounted pod to allow it to carry up second stage propulsion or up to 650kg of research payload, such as a space telescope.

12. Payloads are cargo experiments that are flown on Lynx into sub-orbital space. These experiments are created by students, individuals and companies who wish to conduct sub-orbital and microgravity research and technology development.

## PLAINTIFF'S EMPLOYMENT AND RELOCATION

13. On or about August 5, 2013, Plaintiff started working for Defendant as a Fabricator in Mojave, California. A fabricator builds and manufactures parts based on an engineer's designs. The work requires aligning, fitting, welding, measuring, laying out and inspecting parts, marking/cutting lines, studying specifications, gathering materials, and operating machinery. Plaintiff assisted the engineers in figuring out how to implement and build their designs.

14. Plaintiff was transferred to the machine shop where he was also a machinist. A machinist sets up and operates a variety of tools to build and manufacture parts. A machinist may also fabricate and modify parts to make or repair tools or maintain industrial machines.

15. Within a year of hire, Plaintiff was promoted to Machine Shop Manager. As manager, Plaintiff was responsible for ordering materials, part of the hiring team for hiring machinists, worked directly with the engineers to make the parts, order tools, maintenance of the machines, manufacturing the parts, and quality compliance.

16. Plaintiff has over forty years of machinist/fabricator experience. Prior to his employment with Defendant, Plaintiff had experience in the automotive and aerospace industries.

17. Defendant received approximately $10 million from the City of Midland to relocate to Midland, Texas.

18. In March/April 2015, Defendant informed Plaintiff that it would be relocating the company to its new corporate office and research development center in Midland, Texas.

19. Defendant informed Plaintiff that his position as Machine Shop Manager was being relocated to Midland, Texas. Defendant offered Plaintiff the opportunity to relocate with his position.

20. By accepting Defendant's offer, Plaintiff would be required to remain employed with Defendant for one year after relocating or reimburse Defendant for all relocation expenses.

21. Plaintiff accepted Defendant's offer and continued to work as Machine Shop Manager for the machine shop in Mojave and Midland.

22. Plaintiff purchased a house in Big Spring, TX. Big Spring is about a fifty-mile commute to Defendant's Midland location.

23. In late June 2015, Plaintiff relocated to Midland, TX.

24. Plaintiff started working on or about July 1, 2015, as Machine Shop Manager to Midland. He also continued to be the Machine Shop Manager to Mojave.

25. As manager of both machine shops, it was Plaintiff's responsibility to manufacture parts for all the projects Defendant was involved in. Those projects included the Lynx flight vehicle, Lynx engine test stand, and United Launch Alliance (ULA) engine test stand.

### PLAINTIFF IS LAID OFF AND YOUNGER LESS-QUALIFIED EMPLOYEES ARE RETAINED

26. Plaintiff was the only machinist at the Midland location and one of the only employees with previous aerospace experience.

27. Plaintiff was the "go-to" guy. When Defendant needed something, Plaintiff figured out how to do it.

28. Matt Moya was a planner and worked at the main office in Midland. Moya did not work in the machine shop and did not work under Plaintiff. Moya was hired in October 2014 and worked some with Plaintiff in Mojave.

29. In May/June 2015, while Plaintiff was still in Mojave, Moya expressed an interest in programming to Plaintiff.

30. A machinist operates the tools and machines and puts the parts together. The programmer writes code to automate power driven machines and tools to cut and finish metal, wood, or plastic.

31. Plaintiff could program the machines himself, however, having a separate programmer can be more efficient.

32. Defendant built parts in Midland and sent them to Mojave where the aircraft is located and where testing occurs.

33. Plaintiff started training Moya in programming before he moved to Midland.

34. Moya relocated to Midland after Plaintiff relocated. Plaintiff continued training Moya in programming in Midland.

35.     Moya is significantly younger than Plaintiff.

36.     When they were in Midland, Moya made the comment to Plaintiff, "When are you going to retire so I can take over the machine shop."

37.     Plaintiff had no plans to retire.  He really enjoyed the work and planned to keep working there until he physically could not do the work anymore.

38.      In November 2015, Operations Manager and Plaintiff's immediate supervisor Dale Stix left XCOR.  Also, Jeff Greason, the CEO and President, left XCOR.  All the founders resigned except for Doug Jones.

39.     Around the same time that Stix and Greason left, Michael "Mike" Valant moved from Mojave to Midland and was promoted to Chief Technical Officer (CTO) and Vice President.

40.     While in Mojave, Plaintiff occasionally worked with Valant when Valant was an engineer.  On a couple of occasions, Plaintiff corrected Valant on how to make something.  Valant is significantly younger than Plaintiff.

41.     On or about November 17, 2015, CTO and Vice President Mike Valant, Chief Financial Officer Randy Baker, and Assistant Financial Officer Laura Collins attended a weekly directors meeting.  Geoff Nunn, acting Director and Plaintiff's interim immediate supervisor, was headed to the meeting but it was over before he got there.

42.     On or about November 20, 2015, Plaintiff received a letter from Human Resources Manager, Amber Culwell, informing him that his position was being terminated because of "severe financial difficulties" and that his position was to terminate on November 20, 2015.

43.     Plaintiff was terminated on November 20, 2015.  He was sixty-five years old at the time.  Defendant continued to employ Moya, and in January 2016, Defendant appointed Annie Voight, who is significantly younger than Plaintiff, to be Machine Shop Manager in Mojave.

44. After his termination, Stix told Plaintiff that he was surprised Plaintiff was laid off because he never saw him on any of the layoff lists.

45. Also, Nunn told Plaintiff that the directors had already made their decision before he got to the meeting on or about November 17, 2015, and that they had decided in the meeting that Plaintiff would be laid-off.

46. On or about December 18, 2015, less than one month after Plaintiff's termination, CEO and President Jay Gibson sent an email to all of Defendant's employees stating that their SXC (Space Expedition Corporation) shareholders had made a financial commitment that would provide Defendant with sufficient funding to continue their base operations for all of 2016. SXC was acquired and integrated in XCOR in 2014.

47. After Plaintiff's termination, Defendant's website had seven job opportunities listed, including Composites Technician, for which Plaintiff is qualified.

48. Although Defendant has experienced other layoffs since Plaintiff's termination, but for Defendant's discriminatory conduct, Plaintiff would have continued to work for Defendant until at least May 2016, when Defendant laid off approximately half of its workforce, if not June 30, 2017, when Defendant laid off its remaining employees.

49. The Secretary of State forfeited Defendant's certificate/charter on January 27, 2017, pursuant to Section 171.309 of the Texas Tax Code.

## COUNT ONE – AGE DISCRIMINATION (ADEA)

50. Plaintiff incorporates by reference all of the foregoing and further alleges as follows:

51. Plaintiff is an employee within the meaning of the Age Discrimination in Employment Act of 1967 (ADEA). *See* 29 U.S.C. § 630(f).

52. Defendant is an employer within the meaning of the ADEA. *See* 29 U.S.C. § 630(b).

53. Plaintiff is a qualified individual with at least 40 years of age as defined by the ADEA. *See* 29 U.S.C. § 631(a).

54. To the extent that Defendant offers severe financial difficulties as the reason for Plaintiff's termination, such reason is a pretext for discrimination. Plaintiff would not have suffered adverse employment action "but for" his age.

55. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages. Defendant's conduct was willful and justifies an award of liquidated damages.

COUNT TWO – AGE DISCRIMINATION – CHAPTER 21 OF THE TEXAS LABOR CODE

56. Plaintiff incorporates by reference all of the foregoing and further alleges as follows:

57. Plaintiff is an employee within the meaning of Texas Labor Code § 21.002(7) and belongs to the class of employees protected under the statute, namely employees over the age of 40. *See* Texas Labor Code § 21.101.

58. Defendant is an employer within the meaning of the Texas Labor Code § 21.002(8).

59. Defendant intentionally discriminated against Plaintiff because of his age in violation of the Texas Labor Code by terminating his employment. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages. Defendant's conduct was willful and justifies an award of punitive damages.

DAMAGES

60. Plaintiff was discharged from employment by Defendant. Although he has diligently sought other employment, he has been unable to find a job with comparable pay and benefits. In addition, Plaintiff has incurred expenses in seeking other employment. Plaintiff

suffered damage to his pension or retirement benefits.  Plaintiff seeks compensation for all back pay and lost wages and benefits, including loss of Social Security benefits.  Reinstatement to Plaintiff's previous position is impractical and unworkable.  Therefore, Plaintiff seeks an award of front pay and future lost wages and benefits.  Plaintiff suffered mental anguish and emotional distress.

## ATTORNEY'S FEES

61.   Plaintiff was forced to engage counsel to protect his rights.  Plaintiff is entitled to an award of attorney's fees and costs (including but not limited to an award of reasonable expert witness fees), both trial and appellate, under the ADA, 29 U.S.C. §626 and/or Texas Labor Code §21.259.

## INDIVIDUAL LIABILITY OF DIRECTORS

62.   Due to the forfeiture of Defendant's corporate privileges, Defendant is denied the right to defend itself and each director or officer of the corporation is liable for a debt of the corporation.

## INTEREST

63.   Plaintiff is entitled to prejudgment and post judgment interest at the highest lawful rate.

## JURY TRIAL DEMAND

64.   Plaintiff demands a jury trial.

## PRAYER

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for the following:

a.   Compensatory and punitive damages;

b. Liquidated damages;

c. Back pay and front pay;

d. Attorneys' fees and costs;

e. Prejudgment and post-judgment interest;

f. Such other and further relief, at law or in equity, to which Plaintiff may show himself justly and lawfully entitled.

Respectfully submitted,

By: /s/ Holly B. Williams
    Holly B. Williams
    Texas Bar No. 00788674

**WILLIAMS LAW FIRM, P.C.**
1209 W. Texas Avenue
Midland, TX 79701-6173
432-682-7800; 432-682-1112 (fax)
holly@williamslawpc.com

**ATTORNEYS FOR PLAINTIFF RONALD MORECK**

EEOC Form 161 (11/16)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Ronald Moreck<br>231 River Street<br>Forty Fort, PA 18704 | From: | El Paso Area Office<br>300 E. Main Drive, Suite 500<br>El Paso, TX 79901 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 453-2016-00829 | Jesse R. Hernandez, Investigator | (915) 534-4197 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- **NOTICE OF SUIT RIGHTS** -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
Lucy V. Orta,
Area Office Director

JUL 19 2017
*(Date Mailed)*

Enclosures(s)

cc: Laura Collins
Vice President, Finance & Administration
XCOR Aerospace Inc
PO BOX 61310
Midland, TX 79711

Holly B. Williams
Attorney at Law
Williams Law Firm, P.C.
1209 W. Texas Ave
Midland, Texas 79701

RECEIVED
JUL 24 2017
BY: